Good morning, Your Honors. Sung Park on behalf of the appellant. May it please the Court. In this case, there is no question that there was a detention of the defendant in this matter. However, our main argument is that not only the detention was illegal, but it amounted to a warrantless arrest without probable cause. We have a situation here where a car... Mr. Park, don't we have to find that Judge Stotler's factual findings were clearly erroneous in order to accept your proposition? Because she held a factual and evidentiary hearing on the facts in support of the Terry stop, did she not? And she found as a matter of fact that there was reasonable suspicion that your client had been involved in an armed bank robbery when he was approached by the Garden Grove officers. Right. However, the record does not support her factual findings. So we would have to find that her determination was clearly erroneous in order to provide Mr. Newsome relief, would we not? That's correct. Okay. Thank you. In this case, we have a situation where a car pulls up after two, three hours after the bank robbery at a registered address of the car. It's not just any car. Excuse me? It's not just any car. I mean, the witness got the license plate. That's correct. However, the witness wasn't sure whether he was definitely involved in a bank robbery or not. She suspected he might have been. It's a guy running out of the bank with the dye coming out of his backpack, hopping a car, gets the license plate. The cops go to the registered location where the car is. And sure enough, the car pulls up. Right. However, it's two, three hours after the robbery. And the facts of the case are that the police officers who were waiting at the address. Which was the registered address. That's correct.  Converged to the car. Police going to the registered address, expecting that at some point the car that they're looking for may return to that location. That's a reasonable expectation. And that's why they were there in the first place. However, they converged to the car. Five officers with drawn guns without having ascertained who the driver might have been. It could have been an armed bank robbery. Are they not, counsel? I mean, don't you think the officers have the right to take reasonable precautions for their own safety in approaching a suspect vehicle that may have been the getaway car in an armed robbery? Right. However, it's two, three hours after the fact. Well, that doesn't mean they're not going to get shot by whoever's driving the car if it turns out to be the driver of the getaway car, does it? Right. But the reasonableness is this. That they should have waited until they ascertained the driver. The description of the driver matched the suspect. So is your complaint that the officers should not have approached the car with their weapons drawn under these circumstances until they were sure that the driver was, in fact, the same person that had been seen by the witness? Not only that. Once they approached the car with the guns drawn, they, at that time, they didn't know who the driver was. They couldn't make out the description or the appearance of the driver. They ordered the personnel. You don't want us to issue an opinion that says police officers don't have the right to protect themselves when they're investigating a crime of violence, do you? I mean, we'd look like a bunch of idiots if we wrote an opinion that said that. Right. However, we have a situation where the driver, the suspect was described as being a white Caucasian male. We have a driver who is black in this case. Wasn't there something in the factual findings about the fact that your client actually could look, I guess he was fairly light-skinned, and it was only when the witness saw him in the shade, as he would have appeared inside the car, that she realized that he wasn't Caucasian? I'm not sure if there was in the factual findings. The written factual finding issued by the district court simply stated that the description was substantially accurate, without really referring to the color of the skin of the suspect. What's wrong with that finding of substantially accurate? It's not. The fact is that the color of the skin was different. It was white. The suspect was described as being a white male, and the defendant in this case is a black male. So that can't be substantially accurate in terms of the color of the skin. Does that mean that you can't approach, you can't even get to the point of bringing the witness to view the suspect because you don't have a description that accurately matches? You can't get the witness to look at the suspect? What's wrong? The previewing or the viewing? We're not there yet about the viewing or the previewing. We're still discussing the... You can't even approach the driver, you're saying. Well... It doesn't match anything. Right. However, it's the reasonableness... Do you get enough for a Terry stop here? Well, our argument is that not even for a Terry stop. Once they have a reasonable suspicion that the car might have been involved in a robbery. Reasonable suspicion? You get the license plate, there's red dye coming out the window, the passenger's got his head out the window trying to breathe, and you've got a trail of red dye still in the house? Well, the information that the police officers had... The only thing that was missing was a sign on the side that said, I'm a bank robber and I just robbed a bank. That's the only thing that was missing. The information that the police officers had at that time was simply that this car might have been involved in a robbery and had the license plate number and the general... How many cars go down the street with red dye coming out the back after we know that there was a red dye package in the robbery money? Your Honor, those facts were not known to these officers. At the time the search and the arrest and the search was conducted, those facts were not known. They had to approach the suspect with the facts that they had. It was known to the eyewitness who got the license plate. Isn't that what happened? Eventually that came out during the trial. I mean, they didn't put this license plate out. Right. The facts came out during the trial. Let's fast forward a second. Okay, so then they stop this guy, they take him out of the car, and then they bring the witness to the scene, right? Correct. Okay, tell me what was wrong with the identification at the scene. Our argument is that initially the witness could not identify the defendant as being the suspect. She asked the police officers to see the profile of the defendant, so they allowed her to see the profile. And then she could not... I mean, you can ask them to say the words that the robber used and whatever it takes to help the witness identify the suspect is permissible, is it not? Well, that's what you're trying to ask this court to determine. Where is the line drawn? I thought the Supreme Court had already decided that. You can make the suspect mouth the words that the robber used to the teller. You can have the guy turn sideways if that's how the witness saw him. You can make him don a hat or a cap if that's how the witness saw him. The case law is pretty clear, isn't it, Mr. Park, on that? Right. And we're trying to ask this court to set a limit as far as what can be done in a field identification situation. Well, what exactly was wrong with this when the officer gave the witness the usual admonition about it's just as important to vindicate the innocent as to apprehend the guilty and that sort of thing? What was wrong with it other than... Well, what was wrong with the period? Our argument is that once she couldn't identify the defendant as being the suspect after a couple tries, and then she asked the officers to put him in a shade, move him to a shaded area, our argument is that that stretches it a bit too far, that it's impermissible to allow the witness to keep asking the officers to do things so that she could eventually make the identification. But is that reasonable where the eyewitness reported that she saw the getaway driver inside the car, which I presume even on a sunny day would be under a shaded condition if he's inside a vehicle? Well, we don't know. We don't know whether it would have been in a shade or not. And it's a totally different situation. He's not sitting down... I mean, that just seems reasonable to me. And the police can do what's reasonable under the circumstances, can't they? Well, our argument is that this court needs to address that issue. Where is the line that needs to be drawn as far as what can be done during the field identification? However, that's not the main issue. The main issue is whether there was a proper detention of the defendant, and another issue is whether the detention amounted to an arrest. Given the facts that the officers had known at the time they approached the suspect or defendant, if they had reasonable suspicion, that's the issue for the detention. However, whether it amounted to an arrest goes to the intrusiveness and the aggressiveness of the police officer's conduct. And in this case, you're arguing that it was overly aggressive. Thank you. Which amounted to an arrest. Thanks very much, Mr. Park. Your time is up. Thanks. We'll give you a minute on rebuttal. Thank you. You've exceeded the time. Thank you very much. We'll hear from the government now. Good morning. Good morning, Your Honors. And may it please the Court, Rob Adkins on behalf of the United States. I wanted to respond to several of the arguments raised by the Appellant's Counsel in their brief, specifically their reply briefing, and the argument just now. First of all, to clarify a few things, Ms. Jackson did testify, and it's in the record, that one of the reasons she pulled up next to the car immediately upon seeing the bank robber exit the bank, enter the getaway car, the red dye pack coming out the window, she immediately recognized it and thought, it's a bank robber. That's why she followed the car, pulled up next to it, was on the same level as the car, looked in the car for approximately five seconds to get a good look at the defendant. Moreover, it's also in the record that the reason, which we'll assume we get to in a moment, the reason she asked the officers, she asked the officers to turn the suspect to the side and get in the shade at the show-up identification was because that's how she saw him when she was looking at him immediately following the robbery. Mr. Park's point, I think, was that the identification, they just wouldn't take no for an answer. She wouldn't identify, she couldn't identify them, or couldn't identify him, and instead of just saying okay, kept persisting, insisting that she go on. With respect to that issue, the record is clear. There was no prompting by the officers, even on cross-examination. It certainly came out at the suppression hearing and at trial with respect to Ms. Jackson, that there was no prompting by the officers. Are you sure? Can't you? Maybe we could move him somewhere else. Is there something else we could do? She, immediately upon showing up at the scene for the infield show-up, stated that she wasn't sure. She then asked the officers without prompting to place him in the shade and turn him to the side because that's how she had viewed the suspect at the time. The second argument they raised with respect, and this goes only to the first prong of the Neal v. Biggers test, that the procedure was impermissible. They also point to the getaway vehicle being present at the time, somehow impugning the process, but that's factually incorrect. The record is clear that the getaway vehicle was much further down. In fact, Detective Latshaw testified at the suppression hearing that it was too far away to even really make out anything, including the license plate, and that only after the identification of the suspect was made was she then driven down the street to view the getaway vehicle, and it was only then that she identified it as, indeed, the same car and, as we know, the matching license plate of the getaway vehicle. And so even for that first prong, it's not met. And I would submit upon the argument that's already raised as to the second prong, clearly not being met under the Neal v. Biggers test that it was initially, there was a faulty identification in some way. For all the reasons cited therein, her certainty was definite. In fact, she stated, oh, my God, it's him, upon seeing him in the position that she had seen him initially during the getaway chase. One of the interesting aspects of this case is that because of the timing and all, the question is, was he ever under arrest and when? And if he was under arrest, then how does that affect the analysis relative to what was found on him, the bills and the diet and all that stuff? Could you address that, please? Well, as the Court is well aware, there is no bright line or litmus test as to when a detention elevates itself to a full-blown arrest. Here, the government's position would be that the officer is acting reasonably under a tarry stop in order to resolve their suspicions as to this defendant, who, again, according to Judge Stotler's findings, and another thing I wanted just to correct with respect to the record, she did find that the description of the defendant was substantially accurate, obviously being able to view the defendant in court. Moreover, the officers, when they viewed the defendant upon immediately arriving at the scene, were unable to tell whether he was white or black at the time. And there is statements in the record, both by counsel noting it and by Ms. Jackson, as to the fact that he does appear lighter. But getting to your question as to when the arrest occurred, the government's position based upon the record is that the most reasonable time that the arrest occurred would have been at the time that the suspicion was finally resolved completely, which was at the time of the infield show-up where Ms. Jackson came to the scene and identified the defendant indeed as the one that she had described, that the officers had heard the description over the dispatch radio and identified the car. Now, Your Honor mentioned interesting issues that might arise as to when the arrest might have been. Well, that's the government's position as to when the arrest took place. What if the arrest takes place earlier? Certainly. With respect to supposing that the arrest were deemed to have taken place after the defendant matching the description of the getaway driver arrives at the location for the getaway car, in the getaway car, undisputed and matching the same license plate number, in fact, blue two-toned blazer, a man in a ponytail, pulled out, placed on the ground, handcuffed for officer protection and patted down, at which time they obtained red dye-stained money, thousands of dollars, out of his pockets. Certainly the government's position at that point would be that there's probable cause to arrest. And it's interesting, a case that I think sheds some light on the question that Your Honor is raising is the case that's cited within the government's brief, United States v. Oregon, out of the Ninth Circuit. In that situation, there was a general description of the getaway driver, according to the court, conformed closely to the suspect, who ended up having money in his pockets. The court found that there was probable cause to arrest the robber in that situation, but stated that the fact that they didn't arrest at that time and instead waited for the infield show-up to identify him, they should, in fact, be commended for that caution. But it doesn't affect any kind of analysis to whether there was sufficient probable cause earlier before they officially engaged in a full-blown arrest. The government believes it's very similar here, that, in fact, the arrest occurred after the infield show-up, but that if the court were to deem that it occurred earlier, that certainly there was probable cause to support it based upon the items that were found. I do want to turn very quickly, if I may, to the remaining issue, which I think is also somewhat interesting and not really laid out by the briefs, which is the sentencing issue raised in the appellant's brief. I agree we ought to wait for the Ameline case to be resolved. I do, Your Honor. As the Court is aware, the government has requested en banc review. Certainly, Ameline in its revised form is the current state of the law. However, I did want to make a brief statement as to how the Court, even under the Ameline standard as it currently stands, that this case does not require remand. Ameline, as it was revised in light of the Booker decision by the Supreme Court, viewed the error as being a Sixth Amendment violation because the defendant in Ameline, with respect to a vigorously contested sentencing fact, being the quantity of drugs, basically had his rights violated under the Sixth Amendment because he did not, he was not allowed a jury to make the factual determination of those factors that significantly increased his sentence. Not true here. Here, there are no uncontested, there are no contested facts. The sole issue before the Court on the sentencing is the career offender determination by Judge Stotler. That determination, number one, of the prior convictions, has never been at issue among the Blakely, Booker, Ameline line of cases. Suppose the guidelines, I mean, strike that. We now know that the guidelines are advisory and not mandatory. Don't we have to assume that Judge Stotler thought that she had to sentence him as a career offender? And that, I think, is the difference between, yes, Your Honor, and I think that is the difference between this case and Ameline, however. While the government's position in its petition for en banc rehearing of Ameline is that the error should not have been the Sixth Amendment violation, certainly, but just the error of whether the guidelines are advisory in light of the fact that Booker excised those portions and created those guidelines to be effectively advisory. Acknowledging that there's no Sixth Amendment problem, what do we do with the advisory part of this? That's where we apply correctly the plain error standard to that error. And in the government's view, certainly with respect to this case, there's no plain error that substantially affects the defendant's rights. Here, if it were to be remanded, even under the appellant's own admission, it appears the only issue that they contend still needs to be determined factually is that the defendant was over 18 years old. Those types of facts, especially when the PSR. No, but if the career offender guideline is only advisory and not mandatory, the judge could have sentenced him instead of at level 34, could have sentenced him at level 27. Yes, Your Honor. That's over a hundred-month difference, isn't it? Or could have, certainly, or could have sentenced him to whatever the judge chose, taking into account, of course, the guideline factors, including level 27 and the bump up for the career offender. The government's position with respect to that is similar to its position in en banc review, which is that it's incumbent upon the defendant or the appellant to demonstrate somehow that the result would have been different in order for it to qualify as plain error under Alano. Here, it's in the record, the government, although recommending the low end to Judge Stotler during sentencing, she, and contrary to what probation also recommended low end, she went to the mid-range and, indeed, was, I believe, just six months short of the statutory maximum, was the only thing that held her back. And in doing so, she notes she made several findings about whether there were mitigating factors or aggravating factors. She found there were a few, if any, mitigating factors. She said aggravating factors. She listed several different things in her sentencing ruling, indicating that she felt that was the appropriate sentence for this defendant. And so in analyzing that error question under the appropriate standard of plain error review, the defendant is unable to show in any way in this case that the result would be somehow different, such that it affects his substantial rights or impugns the integrity of the court in some way. Thank you very much, Mr. Ekins. Before you go, let me just, one of the things that we're wrestling with, with regard to Ameline and Booker and Fanfan and so on, is the procedure that the court should follow. And I'm wondering what the government's position is with regard to whether or not it is necessary in a case like this to actually vacate the sentence or whether it would be perhaps appropriate to simply remand the question to Judge Stotler and simply ask her first, you know, would your sentence have been any different had you known that the guidelines were merely advisory and not mandatory? The concern I have is that we now have thousands of inmates who are incarcerated all over the country. And if we start vacating sentences willy-nilly, we're going to have to transport everybody back, jerk them out of prison programs that they've taken months or maybe years to qualify for. And the ultimate result may be no different if you ask the sentencing judges, you know, how you would handle it in this case. Is this one of those cases, to respond to Judge Silverman's concern, where we might want to do that? And I certainly don't want to take a position contrary to what the government's position is on the en banc review petition, which may or may not be granted. But I do think, certainly with respect to this case, if I understand your question correctly, which I believe I do, rather than vacating and remanding for an entire new potentially hearing on sentencing, especially in a situation like this, where it's a very isolated few items, either to remand to ask the question of finding them or, although that would be preferable, alternatively, something along the lines of would you have found these specific facts, which are the very few delineated ones, really only one fact, left as age, apparently, would you have found those facts, even if they were advisory and sentenced accordingly? Thank you. Thank you. Mr. Park, I'll ask you the same question. Mr. Fredkin. I'll just briefly respond to the issue of when the arrest might have taken place. You don't want to answer my question? Excuse me? You don't want to answer my question? Because I'm posing the same question to you. Okay. All right. I'll answer that after this issue. All right. Just briefly, there was a testimony at the evidentiary, the suppression motion hearing, that Officer Kim testified at that time as this. At the time, appellant was arrested and placed on the ground. At the same time, I would have to listen to what's being said and also check the car visually to make sure there is no one else inside the car. This was one of the officers testifying at the suppression hearing as far as when he thought the arrest had taken place. And that was when the defendant was ordered out and placed under arrest and put down, placed on the ground. So the – according to the officer, the arrest took place immediately after his testimony. Isn't that a question of law that we make a determination on? Excuse me? I mean, police officers could swing it anyway. They might say, I never had him under arrest. What difference does it make? It's a question of law that we determine from the facts, correct? That's correct, Your Honor. But at the same time, it should be taken into consideration as far as what they were attempting to do. The second issue is with respect to the sentencing. Our position is that Mr. Newsom's Sixth Amendment rights were violated because the judge made a factual determination that he was a career offender. And the guidelines, Section 4B1.1, specifically states there are three requirements factors to be found to be designated as a career offender. One is that he has to be 18 years or older. Second is that the current offense has to be either a crime of violence or a controlled substance case. And in this situation, that determination was made by the judge. And there was no – That's an issue of law, isn't it? I mean, I'm having a hard time understanding why Almendarez-Torres doesn't foreclose your argument. Well, that case dealt with a specific statute which made a prior – if the person was an illegal alien found, and if that person was deported previously based on an aggravated felony, and the sentences increased, that case dealt with a prior conviction and the nature of the prior conviction. But why can't the Court look at the nature of that conviction and rule as a matter of law, whether or not it constitutes a crime of violence? I mean, we're talking about other armed bank robberies, are we not? Right. But in this case – You don't need a jury to tell – to make a factual finding that an armed bank robbery is a crime of violence. Right. In this case, it's not talking about the prior conviction. It's talking about the current offense. So – But the issue is the same. The question is how you characterize the nature of the offense. And it seems to me that's a pure question of law. That's not a factual issue. Well, it is. I mean, you have to look at what the offense was. Well, the jury found that he aided and abetted an armed bank robbery. I mean, what additional facts does the sentencing judge need to know in order to characterize the conviction as a crime of violence? Well, however, there is a sentencing guideline that explains what constitutes crime of violence. But it's no different from the elements that the jury's already found in deciding that he aided and abetted an armed bank robbery. That force and violence is one of the elements. Right. But the Booker, according to the Supreme Court, says facts other than the prior conviction. So if we want to stick – I mean, stay true to the law that was issued by the Supreme Court, then we have to address that issue. Whether current offense – looking at the current offense and what the nature of the current offense is goes to looking at the prior conviction. Eddie, anything else you have potential to tell me? No. Thank you, Mr. Clark. Mr. Atkins, thank you as well. The case has started to be submitted. Thank you, Your Honor. The next case on the calendar, 0356168, Soroyan Lumber v. Ellen L. Wood, is submitted on the briefs at this time. The next case, Madabi v. Gonzales, 0370866, submission is deferred in accordance with the order previously filed. 0371834, Garcia Apostol v. Gonzales, is submitted on the briefs, as is United States v. Parra Perez, 04500117, and United States v. Arvalo, 0250289. Those cases are submitted on the briefs. The next case, then, to be argued is 0355596, Harabedian v. Allstate Insurance. Each side will have 10 minutes. Good morning. Good morning. Malcolm.
judges: Brunetti, Silverman,tallman